UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA MIAMI DIVISION
CASE NO. 1:23-cv-21726-PCH
(CASE NO. 1:19-cr-20424-CMA-1)

DANIEL GRIFFIN,

        Movant,

 vs.

UNITED STATES OF AMERICA,

        Respondent.

_____/

RESPONSE IN OPPOSITION TO MOVANT'S
MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

      The United States of America, by and through its undersigned Assistant United States Attorney, hereby responds to Griffin's ("Movant") Motion to Vacate, Set Aside or Correct Sentence pursuant to Title 28, U.S.C. Section 2255, as follows:

**1. Course of Proceedings and Disposition in the Court Below**

      On July 11, 2019, a federal grand jury in the Southern District of Florida returned a two-count indictment charging Movant with one count of felon in possession of ammunition, in violation of Title 18 U.S.C. § 922 (g) (Count One) and felon in possession of a firearm and ammunition, in violation of Title 18 U.S.C. § 922 (g) (Count Two) (CRDE 3). Movant proceeded to trial where he was convicted of Count Two of the indictment. On February 5, 2020, Movant was sentenced to 120 months as to Count Two, a period of supervised release and a special assessment. Movant filed a notice of appeal (CRDE 77).

      On January 21, 2021, he filed his first motion to vacate sentence (CRDE 90, CASE NO. 1:21-cv-20262-PCH). On January 25, 2021, the Court dismissed his motion without prejudice since an appeal and a motion for collateral relief cannot be pursued simultaneously (CRDE 91).

On March 11, 2022, a mandate was issued by the Eleventh Circuit Court of Appeals dismissing Movant's appeal.  The Eleventh Circuit completed an independent examination of the entire record, found no arguable issues of merit, allowed his counsel to withdraw, and affirmed Movant's conviction and sentence (CRDE 101).

On February 9, 2022, Movant asked for an extension of time to file an appeal and for appointed appellate counsel, both of which were denied by the Court (CRDE 104, 105).[1] Thereafter, on May 8, 2023, Movant filed the instant motion to vacate his sentence, generating this response.

## 2.  Facts and Prior Criminal Conduct

On October 31, 2017, recorded and monitored contact was made through Facebook Messenger and conventional cellular telephones between Movant and a confidential informant (CI) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) for the negotiation and purchase of a firearm that same day.[2]  The CI and Movant had a pre-existing relationship and had done firearms deals in the past, which provided needed trust for the gun sales (CRDE 87-178). The CI was outfitted with a video/audio recording device (CRDE 87-163).  The recordings were played for the jury at trial, and the CI identified Movant in court. (CRDE 87-160).

The CI, accompanied by an undercover agent (UC) with the ATF, traveled to Olinda Park located at 2101 Northwest 51st Street, in Miami, Florida.  The UC provided the CI with the audio/video recording device and $300 to purchase the firearm.  The CI placed a telephone call to

---

[1]     Movant's attorney filed an *Anders* brief (*Anders v. California*, 386 U.S. 738 (1967)) in which he argued that there were no issues of merit upon which to appeal.  Counsel also filed a motion to withdraw (USCA 11 20-10704).

[2]     Unless cited otherwise, the facts included herein are taken from the Pre-Sentence Investigation Report (PSI) prepared for this case and adopted by this Court.

Movant advising him to meet the CI in the park. Movant stated he would be "making a stop" prior to meeting at said location (PSI 5).

After a short period of time, the UC observed what appeared to be a small utility van with dark tinted windows arriving to the park. Investigation revealed that the vehicle belonged to Movant's brother (CRDE 87-164). The CI approached the passenger side of the van, which was being driven by an older black male (unidentified and unindicted co-conspirator) (PSI 6). Movant handed the older black male the firearm, who then immediately handed the firearm to the CI. The CI provide the $300 to the older black male who subsequently handed it to Movant. Movant told the CI he had "bigger guns as well as Xanax for sale." The CI told Movant he would be back in two weeks for more firearms (PSI 6).

After a short period of time, the CI returned to the UC's vehicle with the firearm purchased from Movant. The UC placed the firearm in the center console of the vehicle and departed the area. The CI informed the UC there were two individuals in the van including Movant (PSI 7).

On July 10, 2018, the CI and the UC once again traveled to Olinda Park in Miami, for the purpose of purchasing a firearm (9-millimeter Glock pistol). The UC observed the CI meet with Movant and exchange $500 for the firearm. This firearm purchase was recorded and monitored. The CI provided the firearm and an extended magazine containing 30 rounds of ammunition to the UC (PSI 8).

On July 30, 2019, law enforcement officers from the ATF Miami Field Division arrested Movant without incident in the parking lot of the Dollar General located at 13925 Northwest 27th Avenue, in Opa-Locka, Florida. Movant was transported to the Federal Detention Center (FDC) in Miami where he remained pending trial (PSI 9).

Movant's PSI revealed numerous instances of prior criminal conduct beginning at age 14. At age 17, Movant was convicted in four separate cases for which he received concurrent terms of imprisonment. The first conviction stemmed from the purchase or possession of marijuana with the intent to purchase (PSI 23). In the second case, he was adjudicated guilty of shooting or throwing a deadly missile (PSI 24). He was also charged and adjudicated guilty of unlawfully discharging a firearm in public and unlawful possession of a firearm by a minor. Both charges resulted in suspended entry of sentence (PSI 24). In the third case, Movant was convicted of second-degree attempted murder (PSI 25). In case four, Movant was convicted of aggravated battery with a firearm (PSI 26). He received six years confinement, with nine years' probation to follow upon release on each case.

In 2010, Movant was released from prison. Within four months, he violated his probation, the first of three times. His final violation resulted in the revocation of his probation and his return to prison for an additional 22 months (PSI 23). This revocation occurred in all four cases (PSI 23, 24, 25, 26).

Movant has extensive other criminal conduct, detailed in his PSI. Notably, Movant's priors included a nolle prossed shooting into an unoccupied dwelling, a nolle prossed/ no actioned armed robbery and armed carjacking, a nolle prossed possession of a firearm by a convicted felon and aggravated battery with a deadly weapon/attempted second degree murder, a felony battery by strangulation, an armed robbery and second strangulation matter, and identity fraud, all of which were also nolle prossed (PSI  28-43).

**3. Memorandum of Law**

Movant alleges the government committed prosecutorial misconduct and that his counsel was ineffective for: (1) failing to argue prosecutorial misconduct or raise it on appeal; (2) failing

to negotiate a favorable plea deal, conduct an adequate pre-trial investigation, and explain the import of pleading guilty instead of proceeding to trial; (3) failing to explain the strategy and theory of defense to Movant; and (4) failing to explain the PSR or file objections to the PSR.

## A.    Timeliness

As a preliminary matter, this Court must decide whether Movant's petition is timely.  Congress has established a one-year period of limitations governing motions for collateral relief under § 2255, and that one-year period runs from the last of four specified events:

> (1) the date on which the judgment of conviction becomes final;

> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Movant was sentenced on February 5, 2020 and filed a notice of appeal.  On March 11, 2022, the Eleventh Circuit Court of Appeals issued a mandate affirming Movant's conviction (CRDE 101).  Movant's claim that his counsel was ineffective must be raised within a year of the date his conviction becomes final.  *See Massaro v. United States,* 538 U.S. 500, 504 (2014) (finding that claims of ineffective assistance of counsel are more properly brought under § 2255 rather than on direct appeal); 28 U.S.C. § 2255(a) and (f).  A judgment of conviction generally becomes final when the opportunity for direct appeal has been exhausted.  *Akins v. United States*, 204 F.3d 1086, 1089 n.1 (11th Cir. 2000).

Accordingly, Petitioner's conviction became final ninety days after his direct appeal, i.e., when the time for filing a petition for certiorari expired. *See Clay v. United States*, 537 U.S. 522, 123 S. Ct. 1072, 155 L. Ed. 2d 88 (2003).  The Eleventh Circuit issued its Mandate on March 11, 2022, and therefore, his conviction became final on June 11, 2022.  Because Movant filed the instant petition on May 10, 2023, it is timely filed.

**B.     Ineffective Assistance of Counsel Standard**

Claims of ineffective assistance of counsel under the Sixth Amendment are examined through the two-part test initially set forth by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  To meet the burden of proving ineffective assistance, a movant must first show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  If this showing can be made, the movant must then demonstrate that the "deficient performance prejudiced the defense," which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*.  Unless a movant can make both showings, he cannot prevail.  See *id*.    The two prongs of Strickland are known respectively as the "performance" and "prejudice" prongs.

When a court evaluates the first prong, "[j]udicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound trial strategy." *Id.* at 689 (internal citations omitted).  This presumption is even stronger where reviewing the performance of an experienced attorney.  *Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc).    To prove incompetence, "[a] petitioner must identify

specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they 'were outside the wide range of professionally competent assistance.'" *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002) (quoting *Strickland*, 466 U.S. at 690).   As the Eleventh Circuit has explained, "the deference afforded an attorney's decision is great and the bar for proving a Sixth Amendment violation is high." *Id*.   In light of the "strong presumption in favor of competence," a petitioner seeking to prove a Sixth Amendment violation "must establish that no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1314-15 (emphasis added).

A movant can prevail under the second prong of *Strickland* only if he can "affirmatively prove prejudice" by showing that counsel's errors "actually had an adverse effect on the defense." 466 U.S. at 693.   In order to make this showing, the movant must demonstrate more than "some conceivable effect on the outcome of the proceeding." *Id.*   Although a movant need not show that the outcome of his case would more likely than not have been different absent counsel's ineffectiveness, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  The Eleventh Circuit has cautioned that "this standard is difficult to meet." *Brownlee*, 306 F.3d at 1059.  In fact, the cases in which a defendant can prove ineffectiveness "are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). When conducting the prejudice inquiry, a court must consider counsel's error in the context of "the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695. Unless a movant can make both showings, he cannot prevail. *See id.*

1.       **Movant's Prosecutorial Misconduct Claim is Procedurally Barred**

Movant alleges that the government committed prosecutorial misconduct, more specifically, entrapment, evidence tampering, and the presentation of false testimony.  Beyond his own conclusory assertions of prosecutorial misconduct, Movant omits any credible explanation of how the prosecution allegedly misled the jury, entrapped him, or tampered with evidence.  By way of example, Movant argues, without support, that the PSI itself and his claim that the CI was not documented, show entrapment.  He states that video recordings displayed incorrect dates and times showing evidence tampering (CRDE 106-11).  He claims his attorney did not discuss trial strategies or any theory of defense and because he did not argue prosecutorial misconduct, he deprived Movant of a fair trial.  However, there is no evidence to support his claims, nor can he show cause, prejudice, or actual innocence.

For starters, Movant's prosecutorial misconduct claim is procedurally barred.   In accordance with the doctrine of procedural default, claims not raised at trial or on direct appeal "may not be raised on collateral review." *Massaro v. United States*, 538 U.S. 500, 504 (2003).  A movant's procedural default can only be excused if they can prove one of two exceptions applies. *McKay*, 657 F.3d at 1196.  The two exceptions occur when the movant can prove either (i) cause and prejudice or (ii) actual innocence.  *Id*.  In this case, there can be no dispute that the Movant is procedurally barred from raising claims of prosecutorial error because he failed to raise them in his direct appeal.

A collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (*per curiam*) (citing *Frady*, 456 U.S. at 165).  Relief under Section 2255 is reserved "for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and

would, if condoned, result in a complete 'miscarriage of justice.'" *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) (quoting *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sep. 1981)).

Prosecutorial misconduct may serve as a basis for relief under § 2255 if the misconduct is so great that the defendant's trial is so fundamentally unfair that the "resulting conviction is a denial of due process." *Davis* 36 F.3d at 1545 (11th Cir. 1994). "Although it is not the task of a habeas court to retry the defendant, the standard for reviewing prosecutorial misconduct requires a weighing of the nature and scope of the instances of misconduct against the evidence of guilt against the accused." *Id.* at 1546. "Clearly, where the evidence against the accused is very strong, in order to merit relief, prosecutorial misconduct would have to be even more egregious and pervasive than in cases where the evidence is less compelling[.]" *Id. Wright v. United States*, 202 U.S. Dist. LEXIS 25873, *11-12.

Movant cannot and does not point to any instance or allegation that illustrates he was denied due process. As discussed throughout this response and as further highlighted by his counsel's Declaration, attached hereto, there was no basis upon which his counsel could raise prosecutorial misconduct, a conclusion affirmed by the Eleventh Circuit when issuing its Mandate, as discussed below. In *Schlup v. Delo*, the court held that the "actual innocence" exception requires the defendant to show that it was "more likely than not that no reasonable juror would have convicted him." 513 U.S. 298, 327-328 (1995). As the Supreme Court further elaborated in *Bousley v. United States*, "'actual innocence' means factual innocence, not mere legal insufficiency." 523 U.S. 614, 623 (1998).

Here, a reasonable jury heard the evidence and did not believe Movant was actually innocent. Furthermore, the Eleventh Circuit independently reviewed the entire record, including

the trial proceedings and sentencing and concluded "that counsel's assessment of the relative merit of the appeal is correct" and that an "independent examination of the entire record reveals no arguable issues of merit." (USCA11 Case: 20-10704).

The fact that a reasonable jury found Movant guilty beyond a reasonable doubt, his counsel opting to file an *Anders* brief instead of raising any issues on appeal, and the Eleventh Circuit concurring and affirming his conviction further shatters Movant's ineffective assistance of counsel claims, including those involving prosecutorial misconduct. These facts also demonstrate why Movant cannot establish cause, prejudice, or actual innocence.

2. **Movant's Ineffective Assistance of Counsel Claims Fail Because His Counsel's Performance Was Not Deficient, Nor Can He Demonstrate Any Prejudice**

Movant complains his counsel was ineffective pre-trial because he did not discuss the benefit of pleading guilty, conduct an adequate investigation, or try to secure a favorable plea agreement in lieu of trial. Movant provides no evidence to support his claims other than an email from one of the government attorneys to his attorney in which a proposed recommendation of four years' imprisonment was discussed as part of a contemplated plea agreement. However, this evidence demonstrates defense counsel's interest in pre-trial resolution, contrary to Movant's assertions in his motion. In fact, as confirmed in the attached Declaration, Movant's attorney discussed with Movant the benefits of pleading guilty instead of proceeding to trial.

His counsel also disclosed the plea offer and recommendation with Movant and counsel's recommendation to plead guilty, but Movant declined to accept the plea offer, wanting instead to proceed to trial. *See* Declaration. As his counsel attests, he reviewed all the evidence, discussed the evidence with Movant, and conducted his own investigation (see attached Declaration). In fact, the very reason that Movant has the email he relies on for support is because his attorney

provided it to him, corroborating that his counsel negotiated on Movant's behalf and disclosed the offer to him, further illustrating the falsity of Movant's argument.

Indeed, Movant's counsel was zealous in his representation of Movant as demonstrated by his ability to secure a favorable plea recommendation and his stellar performance at trial. He aggressively challenged the government's case and effectively cross-examined the government witnesses. Counsel secured an acquittal on one of the two counts of the indictment which involved the selling of a firearm by Movant to the CI, captured on audio and video, a difficult feat for even the most accomplished of attorneys.

The evidence presented at trial was strong and there was more than sufficient evidence to prove beyond a reasonable doubt for a jury to conclude that Movant was guilty of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). During a recorded and monitored meeting by law enforcement, a CI, who testified at trial, purchased a firearm (a 9mm Glock pistol and an extra magazine loaded with ammunition) from Movant. Movant was arrested once the sale was completed. Agents were able to find existing voice and photo evidence on Facebook which aided them in ensuring Movant was the person negotiating with the CI and the CI was identified by law enforcement and by the CI during the trial (CRDE 87-154, 174, 237).

As previously stated, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052,80 L.Ed.2d 674 (1984). Regarding the first prong, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 694, 104 S.Ct. 2052. Thus, to satisfy this prong, a defendant must demonstrate that counsel's performance was objectively unreasonable. *Id.* at 688, 104 S.Ct. at

2064.  Regarding the prejudice prong, a defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

There is no credible evidence to satisfy the requirements of *Strickland*, and Movant has not and cannot demonstrate any objectively unreasonable decisions nor can he show prejudice.  The burden to establish ineffective assistance is "onerous." *Terrell v. GDCP Warden*, 744 F.3d 1255, 1261 (11th Cir. 2014).  "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) (citation omitted).  "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Id*. at 1511 (citation omitted).  Such claims undermine the finality of closed judicial proceedings, so "the rules governing ineffective-assistance claims must be applied with scrupulous care." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1912 (2017) (citation and quotations omitted). Here, Movant's counsel, as evidenced by his declared statements and objective review of his performance indicate that Movant received superior not inferior representation.

Finally, Movant argues his attorney did a substandard job once Movant was convicted, never going over the PSI, failing to file objections, argue for a lower criminal history, or preserve arguments for appeal. Contrary to Movant's representations, counsel filed a Sentencing Memorandum. During the sentencing hearing. counsel objected to some of the PSI conclusions and asked for a downward departure, aggressively arguing on Movant's behalf (CRDE 74, 85); *See also* Declaration.  At Movant's sentencing hearing, in response to Movant's complaint that his attorney represented him for just 30 days before trial, the Court stated: "I thought it was a pretty

12

fair trial.  Frankly, I think your lawyer did an excellent job in a very difficult case." (CRDE 85-22).  His trial decisions and strategies were so solid that no appealable issues existed, a fact that likely led to Movant asking counsel to be removed as his appellate attorney.  It is also a fact that led to the Eleventh Circuit granting counsel's request to be removed and its affirmation of counsel's filing of an *Anders* brief on appeal.  Based on the foregoing, Movant's counsel's performance was not deficient.

Alternatively, if Movant fails to show prejudice, this Court may reject his claim of ineffective assistance of counsel without determining whether counsel's performance was deficient.  *Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995).  To satisfy the prejudice prong, Movant must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions."  *United States v. Frady*, 456 U.S. 152, 153 (1982).  Movant must demonstrate a "reasonable probability" that, but for counsel's unprofessional errors, the result of the proceeding would have been different and that he suffered negatively because of his counsel's actions.  *Strickland*, 466 U.S. at 694.

There were no errors in Movant's trial that created prejudice, and therefore he cannot prevail.  Contrary to Movant's claims, his attorney explained the PSI and sentencing strategies and filed objections, which the Court considered and rejected.  Indeed, Movant received tremendous legal counsel, cannot demonstrate cause and prejudice, and his allegations to the contrary are meritless.

## CONCLUSION

For the foregoing reasons, Movant's Amended Motion to Vacate, Set Aside or Correct

sentence pursuant to Title 28, U.S.C., Section 2255 should be denied.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

*S/Allyson Fritz*
ALLYSON FRITZ
ASSISTANT UNITED STATES ATTORNEY
Florida Court No. A5500092
99 N.E. 4th Street
Miami, Florida 33312
(305) 961-9001 (Office)
Allyson.fritz@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that I filed a copy of the foregoing using CM-ECF on June 20, 2023, and caused a

copy to be mailed to:

Daniel Griffin
Inmate Number 18289-104
Edgefield Federal Correctional Institution
Inmate Mail/Parcels
Post Office Box 725
Edgefield, SC 29824

Respectfully submitted,

*S/Allyson Fritz*
ALLYSON FRITZ
ASSISTANT UNITED STATES ATTORNEY
Florida Court No.
A5500092 99 N.E. 4th Street
Miami, Florida 33312
(305) 961-9001 (Office)
Allyson.fritz@usdoj.gov

14